# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1251

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Tracy A. Cook, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:   October 20, 2003

Filed:   January 30, 2004

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Tracy Cook (Cook) was charged with and convicted of two counts of possession with intent to distribute cocaine base and one count of conspiracy to possess with intent to distribute cocaine base. 21 U.S.C. §§ 841(a)(1), (b)(1), 846 (2000). The district court[1] sentenced Cook to 360 months imprisonment on the first two counts, to run concurrently with a life sentence on the conspiracy count. Cook raises numerous issues on appeal. We affirm.

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

## I.    BACKGROUND

On June 1, 2001, Omaha police officers were conducting surveillance on a wanted man. During the surveillance, the officers saw the wanted man and two other men enter a car and drive away. Cook was later identified as the driver. The police followed in their car. When Cook observed the police following him, he led them on a high-speed chase. The chase concluded when Cook stopped his car and ran, eventually entering a house occupied by a woman and her seven children. These people were strangers to Cook and were frightened by the intrusion. A police officer apprehended Cook at gun point when Cook walked out of a bathroom in the home. The police later found a bag containing 9.3 grams of crack cocaine in the bathroom. Before the police said where the bag was found or described its contents, Cook excitedly said, "You can't charge me with that, you found that in the bathroom and I was arrested in the living room."

Based on Cook's June 1, 2001 conduct, the government later charged Cook with possession with intent to distribute cocaine base, and issued an arrest warrant for him. On September 6, 2001, the police arrested Cook, strip searched him, and discovered a bag containing 4.2 grams of crack cocaine. The government thereafter charged Cook with (1) possession with intent to distribute cocaine base on June 1, 2001, (2) possession with intent to distribute cocaine base on September 6, 2001, and (3) conspiracy to distribute and possession with intent to distribute 50 grams or more of cocaine base from on or about January 1, 2000, through September 6, 2001.

Nearly seven weeks before trial, the government filed an Information to Establish Prior Convictions. At trial, Cook testified about his several prior felony convictions. Also during Cook's trial, the government introduced the testimony of Patrick Watson (Watson), Gregory Figures (Figures), Jimmy Swain (Swain), and William Hawkins (Hawkins). These four witnesses testified they saw Cook with crack cocaine on numerous occasions, bought crack cocaine from Cook, sold crack cocaine to Cook, and bought and sold crack cocaine with Cook. Cook's counsel tried

to paint the adverse witnesses as untrustworthy felons seeking leniency for testifying against Cook.  The jury found Cook guilty on all counts.

At Cook's sentencing hearing, the district court held Cook responsible for 694 grams of crack cocaine.  Finding Cook's actions on June 1, 2001 endangered people, the district court applied a two-level obstruction of justice enhancement.  The district court also found Cook had two prior felony drug convictions.  Based on its findings, the district court sentenced Cook to 360 months imprisonment on the first two counts, to run concurrently with a life sentence on the conspiracy count.

On appeal, Cook's counsel argues (1) the district court improperly enhanced Cook's sentence based on two prior felony drug convictions, (2) the district court improperly applied an obstruction of justice enhancement, and (3) Cook's conviction was not supported by sufficient evidence.  By way of a pro se supplemental brief, Cook also alleges (1) he was denied a competency hearing, (2) he was not properly notified of the government's intent to use prior convictions to enhance his sentence, (3) he was denied a fair trial when the government introduced five prior convictions, (4) he was denied the effective assistance of counsel, and (5) sufficient evidence did not support his conspiracy conviction.

## II.    DISCUSSION
### A.    Prior Convictions

Cook contends the district court improperly enhanced Cook's sentence based on two prior felony drug convictions.  We review de novo the district court's use of two of Cook's prior convictions for enhancement purposes.  United States v. Stallings, 301 F.3d 919, 920 (8th Cir. 2002).  Although Cook argues in his pro se supplemental brief he was not notified of the government's intent to use two of his prior convictions to enhance his sentence, his counsel correctly acknowledges the government gave proper notice before trial when it filed an Information to Establish

Prior Convictions under 21 U.S.C. § 851(a)(1) (authorizing increased punishment for prior convictions if notice provided before trial). Thus, Cook received proper notice.

Cook also contends his sentence cannot be enhanced, because he was convicted and sentenced on the same day for both prior felony convictions. During trial and at sentencing, Cook admitted he was convicted of two separate drug offenses on October 10, 1997. Specifically, Cook was convicted of an April 9, 1997 possession of cocaine offense, and an October 7, 1997 possession of cocaine offense. It does not matter that Cook was convicted and sentenced on the same day. What matters is he was convicted of two separate criminal episodes. See United States v. Gray, 152 F.3d 816, 821-22 (8th Cir. 1998) (holding a sentence enhancement for two prior convictions must be based on separate criminal episodes). Thus, we hold the district court properly used the two prior convictions for possessing cocaine to enhance Cook's sentence. See 21 U.S.C. § 841(b)(1)(A) (mandating life imprisonment for a person convicted of two prior felony drug convictions).

## B.  Sentence Enhancement

Cook maintains the district court's decision to enhance Cook's sentence for obstructing justice (i.e., reckless endangerment during flight) was clearly erroneous, as it was based on unreliable evidence. We review the factual findings underlying a sentence enhancement for clear error. United States v. Tirado, 313 F.3d 437, 440 (8th Cir. 2002).

The Sentencing Guidelines provide a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2 (2001). Reckless means "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." Id. § 2A1.4, cmt. n.1; § 3C1.2,

cmt. n.2. The district court found Cook's June 1, 2001 conduct endangered people through his evasive, high speed driving and his rushing into a stranger's home to hide and to conceal crack cocaine.

Cook was driving a vehicle while intoxicated when he chose to flee the police, who pursued with police cars and a surveillance helicopter. Cook drove at high speeds in a residential area. Cook admittedly crossed an intersection through oncoming cross-traffic. After abandoning his car, Cook charged into a stranger's home, requiring a police officer to enter the house at gunpoint to arrest Cook. The residents of the house included a mother and her seven children. The mother testified she was frightened, and an officer testified the residents seemed "very upset and almost in a state of shock." The officer, at gun point, ordered Cook onto the floor. These events–caused by Cook–created a substantial risk of serious bodily injury to others. The district court's findings are clearly not erroneous.

### C.      Sufficiency of the Evidence

Cook argues there was insufficient evidence to support the guilty verdict on the conspiracy count. Cook confronts a high hurdle with this argument, as we must employ a very strict standard of review on this issue. United States v. Sanders, 341 F.3d 809, 815 (8th Cir. 2003). We must view "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. (citation omitted). We may reverse only if no reasonable jury could have found Cook guilty. Id. The government had to prove there was an agreement to distribute cocaine base, which Cook knew and intentionally joined. Id. The government could prove the existence of a conspiracy with direct or circumstantial evidence. Id.

Cook's argument on appeal sounds more like a summation to a jury. Cook repeatedly attacks the veracity and credibility of adverse witnesses. These arguments

did not persuade the jury, and are similarly unconvincing on appeal. See United States v. Espino, 317 F.3d 788, 794 (8th Cir. 2003) (stating the jury "is always the ultimate arbiter of a witness's credibility, and this Court will not disturb the jury's findings in this regard"). The jury concluded the government met its burden to prove the conspiracy count beyond a reasonable doubt. Because the record supports this conclusion, we will not overturn the jury's verdict.

Although the record contains substantial evidence of Cook's involvement in a conspiracy to distribute cocaine base, we focus only on the testimony of Hawkins and Watson. Hawkins testified to the following: (1) he dealt drugs with Cook in 1996 and 1997, as well as from 2000 to August 2001; (2) he sold Cook 1/4 to 1 ounce of crack cocaine each time for Cook to distribute; (3) he sold Cook an ounce (i.e., 28 grams) of crack cocaine about three times in 2000 and 2001, and 1/4 to 1/2 ounce more than five times; (4) he never saw Cook use the crack cocaine; (5) he and Cook had an arrangement to constantly have drugs to sell; (6) under their arrangement, Hawkins would get drugs from Cook when Hawkins was unable to get drugs, and Cook would get drugs from Hawkins when Cook was unable to get drugs; (7) when he did not have enough money to purchase drugs to sell, he would get money from Cook to buy drugs; (8) he and Cook both owned scales to weigh their drugs; (9) he and Cook sold crack cocaine in each other's presence, and they took turns selling crack cocaine to their customers; and (10) he and Cook once agreed to split the cost of buying three ounces of crack cocaine from a supplier, Figures.

In addition to hearing Hawkins's testimony, the jury also heard from Watson. Watson testified as follows: (1) he bought 1/4 ounce of crack cocaine from Cook three or four times; (2) he sold an ounce of crack cocaine to Cook four to seven times; (3) he saw Cook with electronic and digital scales; (4) the amounts he sold to Cook were too large for Cook to smoke, intimating Cook would then distribute the crack cocaine; (5) he never observed Cook use crack cocaine; and (6) he and Cook had a business relationship to purchase drugs from each other whenever one of their

suppliers did not have drugs available. We conclude the evidence supports the jury's conviction on the conspiracy count.[2]

### D. Competency to Stand Trial

Cook argues in his pro se supplemental brief he was denied due process by the district court's refusal to grant his request for a competency hearing and a mental evaluation. Congress designated the district court as the gatekeeper on competency issues. See 18 U.S.C. § 4241(a). Congress authorizes a competency hearing when "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Id. After hearing testimony from Cook and his grandmother regarding Cook's competency and mental condition, the district court found Cook mentally competent to stand trial. This competency determination is a factual finding we affirm "unless clearly arbitrary or unwarranted, or clearly erroneous." United States v. Voice, 627 F.2d 138, 141 (8th Cir. 1980) (citations omitted). We note the "[p]resence of a mental illness does not equate with incompetency to stand trial." Feguer v. United States, 302 F.2d 214, 236 (8th Cir. 1962) (Blackmun, J.).

In his testimony, Cook demonstrated an understanding of the charges against him, his rights, and how the criminal justice system operates. Cook focused his competency testimony on the fact he did not want to go to jail for a long time, and

---

[2]The brief submitted by Cook's counsel and Cook's pro se supplemental brief seem to attack only the conspiracy conviction. To the extent Cook also attacks the jury's guilty verdict on the two counts of possession with intent to distribute cocaine base, we readily reject this argument. On two occasions, the police arrested Cook with 9.3 grams and 4.2 grams, respectively, of crack cocaine in his possession. Combined with the evidence supporting the conspiracy conviction, the jury quite reasonably concluded Cook possessed with intent to distribute cocaine base.

that he wanted this case to be over. As most criminal defendants have similar wishes, we cannot find any facts that would assist Cook with his competency plea. Cook's trial counsel told the district court Cook vacillated on how he wanted his counsel to represent him, suggesting an updated psychiatric evaluation was necessary. Such vacillation did not demonstrate an incompetency to stand trial or need for a psychiatric evaluation. Reviewing the record, we conclude the district court's competency determination was not clearly arbitrary or unwarranted, or clearly erroneous.[3]

Finally, Cook argues his previous felony drug convictions used to enhance his sentence in this case also violated his rights because he now challenges his competency in those cases. Because Cook's argument is directed at the wrong court at the wrong time, we refuse to confront this belated assertion of incompetency.

## E.    Impeachment Evidence

Cook complains in his pro se brief that the district court erroneously admitted evidence of five of Cook's prior convictions. Cook acknowledges no objections to this evidence were made at trial. Thus, we employ a plain error standard of review, under which Cook must show a plain error that affects his substantial rights. United States v. Collins, 340 F.3d 672, 682 (8th Cir. 2003). If Cook can make such a showing, we have "discretion to correct a forfeited error if 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). Given the amount of evidence against Cook in this case, including the 13.5 ounces of crack cocaine found on his person, we cannot conclude under a plain error standard that the evidence of Cook's

---

[3]We note Cook, on appeal, submitted a pro se supplemental brief exceeding twenty pages and raising numerous complex legal issues. In reading Cook's appellate brief, we see no signs of incompetency.

prior convictions affected his substantial rights or called into question the fairness, integrity or public reputation of the judicial proceedings against him.

### F.    Ineffective Assistance of Counsel

Cook finally raises claims of ineffective assistance of counsel, arguing in his pro se brief his "counsel deliberately sabotaged" his defense.  Specifically, Cook faults his trial counsel for attacking the credibility of adverse witnesses by bringing up gang membership, opening the door for evidence about Cook's gang membership. Cook faults his trial counsel for bringing up the time Cook spent in prison, and for failing to exclude evidence of prior convictions.  Cook also argues his trial and appellate counsel were ineffective on the competency issue.  Cook argues his trial counsel failed to obtain all of Cook's medical records for the district court's consideration, and his appellate counsel failed to obtain those records and submit the records to our court for review.

To prove ineffective assistance of counsel, Cook must show his counsel's deficient performance fell below an objective standard of reasonableness, and the deficient performance prejudiced Cook's defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Generally, ineffective assistance of counsel claims are better left for post-conviction proceedings.  United States v. Soriano-Hernandez, 310 F.3d 1099, 1105 n.9 (8th Cir. 2002).  However, these claims are proper on direct appeal in exceptional cases where the record has been fully developed or to avoid a plain miscarriage of justice.  Id.  Ineffective assistance claims may also be appropriate on direct appeal when trial counsel's ineffectiveness is readily apparent or obviously deficient.  See Massaro v. United States, 123 S. Ct. 1690, 1696 (2003).

Based on the undeveloped record before us, we cannot properly analyze Cook's pro se allegations of ineffective assistance of counsel.  First, Cook's counsel apparently sought to impeach one adverse witness by revealing that witness's gang membership, and sought to impeach another adverse witness by asserting an

impossibility defense, i.e., the adverse witness lied because Cook was in prison at the time the witness said Cook was conspiring to sell drugs. Second, to avoid the obvious result which flows from the district court's competency determination, Cook now focuses his allegations on undiscovered medical records. Nothing before us indicates the failure of Cook's counsel to obtain Cook's medical records would have altered the outcome of the trial or the district court's competency decision. Because we have only a pro se brief and an undeveloped factual record on the ineffective assistance of counsel claims, we refuse to address Cook's claims now, as his claims are better left to a proceeding under 28 U.S.C. § 2255. See United States v. Logan, 333 F.3d 876, 878 (8th Cir. 2003); United States v. Jefferson, 215 F.3d 820, 825 (8th Cir. 2000) (refusing to address pro se ineffective assistance of counsel claims on direct appeal).

### G. Additional Claims

We have addressed all of the recognizable issues Cook raised in his pro se brief. To the extent Cook raises additional issues, the issues are incoherent and meritless. See 8th Cir. R. 47B.

## III. CONCLUSION

Based on the foregoing reasons, we affirm Cook's convictions and sentence.

_____

-10-